# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

DEANDREA S. GRAY,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Movant,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　)　　No. 4:13-cv-00970-DGK
　　　　　　　　　　　　　　　　　　)　　(Crim. No. 4:10-099-DGK)
UNITED STATES OF AMERICA,　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Respondent.　　　　　　　　)

## ORDER GRANTING IN PART MOTION FOR POSTCONVICTION RELIEF
## AND CERTIFICATE OF APPEALABILITY

This habeas case arises out of Movant Deandrea S. Gray's agreement to plead guilty to possession with intent to distribute cocaine and possession of a firearm in furtherance of a drug trafficking crime. The parties agree that the intent of the plea agreement was for Gray to plead guilty to possession with intent to distribute more than 50 grams of cocaine, a violation of 21 U.S.C. § 841(b)(1)(C). However, he mistakenly pled guilty to, and was sentenced under, the wrong statute: 21 U.S.C. § 841(b)(1)(B).

Now before the Court is Gray's pro se "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody" (Doc. 1). Because the information failed to allege an essential element of the crime to which Gray pled guilty and this error violated a substantial right and prejudiced him, the motion is GRANTED IN PART. Pursuant to 28 U.S.C. § 2255(b), the Court issues an amended judgment stating that on Count One Gray is guilty of violating "21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C)." Additionally, since this case raises several important questions and Gray has made a substantial showing of the denial of a constitutional right, the Court issues a certificate of appealability on three issues.

## Background and Procedural History

On March 23, 2010, Kansas City, Missouri, police officers observed Gray leave a suspected drug house and drive away in a Dodge Durango. After the police stopped the Durango, Gray and a passenger, Gerome King, attempted to flee on foot. The police caught both. During a subsequent search of the Durango, the police found two clear plastic bags containing a 262.12 grams of powder cocaine, $1,749 in U.S. currency, a stolen Desert Eagle .44 magnum handgun, and a Glock 9 mm handgun with 26 rounds in the magazine and one in the chamber. During a subsequent search of the drug house, the police recovered cocaine base, more powder cocaine, and several weapons. At the time of his arrest, Gray was a felon, having pled guilty to first degree assault in Missouri state court in 1992.

On April 6, 2010, a grand jury returned a three-count indictment charging Gray and King with conspiracy to distribute 50 grams or more of cocaine base (Count One); possession of firearms in furtherance of a drug trafficking crime (Count Two); and being a felon in possession of a weapon (Count Three). At the time, Count One carried a sentence of ten years to life, and Count Two carried a sentence of five years to life to be served consecutively. Had Gray been found guilty on just Count One and Two, he faced a statutory minimum sentence of fifteen years' imprisonment and a possible maximum sentence of life imprisonment.

At the time Gray was indicted, possession with intent to distribute 50 grams or more of cocaine base carried a ten-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A). After Gray's indictment, but prior to his change of plea, Congress passed the Fair Sentencing Act of 2010 ("the FSA"), which reduced the sentencing disparity created by treating one gram of cocaine base as equivalent to 100 grams of powder cocaine. The FSA did so by raising the amount of cocaine base necessary to qualify for the ten-year minimum sentence under §

841(b)(1)(A) to 280 grams, and raising the amount of cocaine base necessary to qualify for a five-year minimum sentence under § 841(b)(1)(B) to 28 grams. The FSA left untouched the requirement that a defendant be responsible for 500 grams or more of powder cocaine to be subject to a five-year mandatory minimum under § 841(b)(1)(B).

### The Information and Plea Agreement

On or about October 21, 2010, Gray, through counsel, struck a plea bargain with the Government that lowered his maximum possible sentence. The terms of the deal, including the parties' respective admissions and responsibilities, were memorialized in a written plea agreement ("the Plea Agreement"). Gray agreed to plead guilty to a newly filed, two-count information ("the Information"). Count One of the Information replaced the conspiracy to distribute cocaine base charge with a charge of possession with intent to distribute 50 grams or more of cocaine powder. It stated Gray "knowingly and intentionally possessed with intent to distribute 50 grams or more of [powder] cocaine . . . in violation of Title 21, United States Code, Sections 841(a)(1) and *(b)(1)(B)*." Information at 1 (emphasis added). The Information's header cited "21 U.S.C. §§ 841(a)(1), (b)(1)(B)" as the applicable statutes and listed the applicable range of punishment as "NLT 5 Years, NMT 40 years' imprisonment."[1] *Id.* Count Two of the Information was identical to Count Two of the Indictment.

The Information and Plea Agreement correctly stated that possession with intent to distribute 50 grams or more of powder cocaine was a violation of 21 U.S.C. § 841(a)(1), but incorrectly stated that § 841(b)(1)(B) supplied the applicable range of punishment. Information at 1; Plea Agreement at ¶ 5. In fact, § 841(b)(1)(B) would have applied if the defendant possessed more than 500 grams of powder cocaine, and it carried a statutory range of punishment

---

[1] "NLT 5 Years, NMT 40 years' imprisonment" is an abbreviation for a statutory range of punishment that is not less than five years' and not more than forty years' imprisonment.

of five to forty years' imprisonment.  21 U.S.C. § 841(b)(1)(B).  Thus, § 841(b)(1)(C) should have applied because Gray possessed less than 500 grams of powder cocaine, and the punishment imposed should have been not more than twenty years' imprisonment, with no statutory minimum.  21 U.S.C. § 841(b)(1)(C).  The Information and Plea Agreement correctly stated that Count Two carried a sentence of five years to life, to be served consecutively to the sentence imposed on Count One.  Information at 1; Plea Agreement at ¶ 5.

In the "Factual Basis for Guilty Plea" section of the Plea Agreement, the parties agreed that the police found 262.12 grams of powder cocaine and $1,749 in U.S. currency in the Durango.  Plea Agreement at ¶ 3.  Gray also acknowledged he knew he was in possession of powder cocaine; he possessed with intent to distribute 50 grams or more of powder cocaine; and that he committed the crime of possession with intent to distribute cocaine.  *Id.*  But here, too, the parties referenced the wrong statutory subsection to supply the range of punishment on Count One.  In the "Statutory Penalties" section of the agreement, Gray acknowledged that by pleading guilty to Count One "charging him with possession with intent to distribute 50 grams or more of cocaine, the minimum penalty the Court may impose is five years, while [the] maximum penalty the Court may impose is not more than forty years of imprisonment."  *Id.* at ¶ 5.

In the "Waiver of Appellate and Post-Conviction Rights" section of the Plea Agreement, Gray acknowledged that he waived "his right to appeal or collaterally attack a finding of guilt . . . except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct."  *Id.* at ¶ 15(a).  He also waived "his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence."  *Id.* at ¶ 15(b).  The Plea Agreement defines an "illegal sentence" as "a sentence imposed in excess of the statutory maximum, but does not include less serious

sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence." *Id.*

Finally, Gray acknowledged that the Court would consult the Sentencing Guidelines in determining his punishment, though the Guidelines were only advisory. He agreed the Court could impose a sentence less than or greater than the Guidelines, as long as the sentence was within the statutory range of punishment. *Id.* at ¶¶ 6, 10.

**Gray's Change of Plea and Sentencing**

On October 21, 2010, Gray pled guilty in open court pursuant to the Plea Agreement. During the change of plea hearing, the Court—relying on the range of punishment information listed in both the Information and the Plea Agreement—incorrectly advised Gray that the applicable statutory range of punishment on Count One was five to forty years' imprisonment, but correctly advised him that the statutory range of punishment on Count Two was five years to life, to be served consecutively to the sentence imposed on Count One. The Court also incorrectly told him that by pleading guilty to the Information, he faced a total statutory minimum of "at least ten years in prison," and that the total maximum sentence was life imprisonment. The Court should have told him that the total statutory minimum was only five years' imprisonment.

The Court sentenced Gray on July 27, 2011. At the time, the Court understood Gray had pled guilty under Count One to "possession with intent to distribute 50 grams or more of cocaine," and that § 841(b)(1)(B) provided the applicable range of punishment. Tr. of July 27, 2011, Sentencing Hr'g at 4. The Court began the guidelines calculation with a statutory range of punishment of five to forty years' imprisonment. Because Gray was a career offender under the Career Offender Table, the applicable Guidelines range of punishment was 262 to 327 months'

5

imprisonment. This was the same range of punishment Gray faced if he were properly sentenced as a career offender under § 841(b)(1)(C). After considering all of the relevant factors, including the 18 U.S.C. § 3553(a) sentencing factors, Gray's arguments, and his allocution, the Court sentenced Gray to 130 months' imprisonment on Count One and 60 months' imprisonment, the statutory minimum, on Count Two. As required by the weapons statute, the Court ordered the sentences to run consecutively for a total of 190 months' imprisonment.

The judgment ("Judgment") issued shortly afterward was consistent with the Court's oral pronouncement. It stated that the "nature of [the] offense" on Count One was "Possession With Intent to Distribute 50 Grams or More of Cocaine," and that the Court adjudicated Gray guilty under "21 U.S.C. 841(a)(1) and (b)(1)(B)."

### His Appeal and Collateral Attack

Gray filed an appeal challenging his sentence. *United States v. Gray*, No. 11-2726 (8th Cir. filed Aug. 11, 2011). The Eighth Circuit dismissed this appeal on the Government's motion based on the Plea Agreement's appellate waiver provision. *United States v. Gray*, No. 11-2726 (8th Cir. Feb. 3, 2012).

On September 20, 2013, Gray timely filed the pending § 2255 petition collaterally attacking his conviction and sentence. His initial brief raised four general grounds for relief. In its response, the Government argued that most of Gray's arguments had either been waived under the Plea Agreement or procedurally defaulted. Gov't Resp. (Doc. 6) at 15. The Government also disclosed that in preparing its response to Gray's initial brief, it discovered that both the Information and the Plea Agreement "erroneously cited 21 U.S.C. § 841(b)(1)(B), rather than § 841(b)(1)(C), regarding the statutory range of punishment" for Count One. *Id.* at 20-21.[2]

---

[2] Had counsel for the Government not caught this error and brought it to the Court's and Movant's attention, no one would have been aware of the error. The Court commends counsel for bringing this information to light.

In his reply brief, Gray raised three[3] new arguments relating to this error. Resp. to Gov't. Resp. (Doc. 8). The Court then asked (Doc. 9) the Government to file additional briefing responding to the arguments raised in Gray's reply brief. The Court also instructed the Government to brief two additional issues: (1) whether Gray's conviction under § 841(b)(1)(B) prejudiced him by leaving him with a conviction for a more serious offense than he actually committed; and (2) assuming the Court would have imposed the same sentence on Gray had he been convicted under § 841(b)(1)(C) because he was a career offender, could the Court cure any error regarding his record by correcting the judgment under Rule 36 to show it convicted him under § 841(b)(1)(C).

The Government timely filed a sur-reply (Doc. 10) addressing all of Gray's arguments and the Court's concerns. The sur-reply did not argue waiver or procedural default with respect to the arguments raised in Gray's reply.

## Standard of Review

In a proceeding brought under 28 U.S.C. § 2255, the district court may "vacate, set aside or correct [a] sentence" that "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). A § 2255 petition "is not a substitute for a direct appeal, and is not the proper way to complain about simple trial errors." *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir.1994) (internal citations omitted). Furthermore, where a movant does not bring a claim on direct appeal, he can be barred from raising the claim in a § 2255 proceeding unless he establishes: (1) cause for the procedural default and actual prejudice; or (2) that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998).

---

[3] Like many claims presented by pro se litigants, Movant's arguments are difficult to follow and not particularly well-organized. The Court construes Movant's reply brief as making three separate arguments.

**Discussion**

Gray asserts four general grounds for relief in his initial brief and three more in his reply brief. The former have no merit and are discussed in Section I. The latter are more complicated and have some merit. They are discussed in Section II.

**I.      The claims raised in Gray's initial brief are meritless.**

In his initial brief, Gray raises four general grounds for relief with multiple allegations under each ground. He argues the Court should vacate his sentence because: (1) he received ineffective assistance of counsel, Mem. in Supp. (Doc. 2) at 1-2, 5-6; (2) the Court imposed an illegal sentence based on an unlawful conviction, *id.* at 12-14; (3) the Government committed prosecutorial misconduct, *id.* at 12; and (4) his guilty plea was not made knowingly, voluntarily, or intelligently because his attorney knowingly misled him about a variety of things. Mot. (Doc. 1) at 9, Mem. in Supp. at 2-4.

Most of Gray's arguments rest in one way or another on his claim that he was not convicted of first degree assault in 1992, a claim that this Court previously discussed and rejected and that the Eighth Circuit also rejected. This issue is, however, properly raised in this § 2255 motion as an ineffective assistance of counsel claim for failure to investigate, and so the Court will consider the argument in that context. The other cognizable claim raised in Gray's initial brief also alleges ineffective assistance of counsel, specifically that his attorney was ineffective for advising him that he faced a potential life sentence if he did not plead guilty.

The remaining arguments in Gray's initial brief are either not cognizable in this proceeding because they were raised on direct appeal and denied, *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001), or not raised on direct appeal but cannot be raised for the first time

8

in a § 2255 proceeding. *Bousley,* 523 U.S. at 622. The Court will not discuss these claims further.

### A.   Counsel was not ineffective in researching Gray's 1992 conviction.

To succeed on a claim of ineffective assistance of counsel, a movant must show that "(1) trial counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney, and (2) trial counsel's deficient performance prejudiced the defense." *Armstrong v. Kemna*, 534 F.3d 857, 863 (8th Cir. 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984)). Judicial review of trial counsel's performance is highly deferential, "indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Middleton v. Roper*, 455 F.3d 838, 846 (8th Cir. 2006). Trial counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Strategic choices made in the shadow of a lack of preparation or investigation, however, are not protected by the same presumption. *Armstrong*, 534 F.3d at 864.

To establish prejudice, a movant must show that the outcome would have been different had counsel's performance not been deficient. If the movant cannot show a reasonable probability that the outcome would have been different, he cannot show prejudice. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). Failure to satisfy either prong is fatal to the claim, and the court need not reach the performance prong if the defendant suffered no prejudice from the alleged ineffectiveness. *See Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997).

Gray alleges he received ineffective assistance of trial counsel because trial counsel failed to investigate and prove that Gray was not convicted of first degree assault in 1992. Gray

contends, without providing supporting evidence, that he actually pled guilty to carrying a concealed weapon ("CCW"), and that the state court records are incorrect.

Gray cannot show that he was prejudiced by trial counsel's performance in researching his 1992 conviction. As the Jackson County Circuit Court recently observed in denying a state court motion to correct his sentence, Gray "cannot establish from the record that the judgments entered in these cases were not in fact the judgments entered by this Court." *State v. Gray*, Case Nos. CR91-4773, 92-0032, slip op. at 6 (Mo. Cir. Ct. July 16, 2013) (Doc. 2-2 at 36). "Other than his own self-serving statements that he did not plead guilty to the offenses contained in the judgments, there is no evidence . . . that Defendant pled guilty to offenses other than the offenses listed in the judgment entered by the Court on October 7, 1992." *Id.* at 7. There was no amended information in the file or notations in the judgment suggesting he pled guilty to CCW. *Id.* Additionally, since the state court sentenced Gray to seven years' imprisonment when the maximum sentence for CCW at that time was only five years' imprisonment, Gray's claims were patently "inconsistent with legal rules and laws that existed in 1992." *Id.*

Because Gray pled guilty to first degree assault in 1992, he was not prejudiced in any way by trial counsel's failure to investigate this claim further, and he cannot prevail on this ineffective assistance of counsel claim.

**B.      Counsel was not ineffective for advising Gray that he faced a potential life sentence if he did not agree to the Plea Agreement.**

There is also no merit to Gray's claim that his attorney made "improper comments" by telling him he faced a potential life sentence if he did not plead guilty because Gray did, in fact, face a potential life sentence if he did not agree to the Plea Agreement. The original three-count indictment charged Gray with conspiracy to distribute 50 grams or more of cocaine base, possession of firearms in furtherance of a drug trafficking crime, and being a felon in possession

10

of a weapon. These charges exposed Gray to a possible maximum sentence of life imprisonment, which is what his attorney advised him. Consequently, counsel's performance was not deficient. *See DeRoo*, 223 F.3d at 925.

## II. Gray is entitled to relief under § 2255(b) in the form of an amended judgment stating he was convicted on Count One of violating 21 U.S.C. § 841(b)(1)(C).

The Court now turns to the claims raised in Gray's reply brief. Although the Court will not normally consider arguments raised for the first time in a reply brief, the Government has not objected to consideration of these additional arguments and has filed a sur-response addressing their merits. Consequently, the Government has not been prejudiced by the Court's consideration of these claims.

Gray's three additional arguments are as follows: First, his conviction and sentence are unlawful because the Information "was invalid on its face." Reply (Doc. 8) at 13-15. Second, his guilty plea was not knowing and voluntary because he was misinformed of the statutory range of punishment when he pled guilty. *Id.* at 14-15. Third, he was denied the right to effective assistance of counsel because his trial attorney advised him to plead guilty to a crime of which he was actually innocent, a crime that the stipulated facts demonstrate he could not have committed. *Id.* at 14-16. His trial and appellate counsel also erred in not discovering the citation to the wrong statute, and but for his attorneys' errors, he would have insisted on going to trial to make the Government prove he violated 21 U.S.C. § 841(b)(1)(B) by possessing 500 grams or more of cocaine. *Id.* at 15-16, 19. Underpinning all of these claims is Gray's contention that he is actually innocent of possessing 500 grams or more of cocaine, but guilty of possessing 50 grams or more of cocaine.[4] *Id.* at 13.

---

[4] In the context of a habeas petition, actual innocence is not an independent substantive claim; it is a means of excusing a procedural bar. *Herrera v. Collins*, 506 U.S. 390 (1993). Because there is no procedural bar to considering these claims, the Court need not undertake an "actual innocence" analysis.

Case 4:13-cv-00970-DGK   Document 11   Filed 07/31/15   Page 11 of 21

In response, the Government "concedes that the facts to which Gray pleaded guilty did not support an offense under 21 U.S.C. § 841(b)(1)(B)," but also observes "the information does support Gray's admission that he possessed with intent to distribute '50 grams or more of cocaine,'" thus a conviction under § 841(b)(1)(C) is appropriate. Sur-Reply (Doc. 10) at 2-3. The Government contends Gray was not prejudiced in terms of the sentence imposed because his Guidelines range was the same regardless of the error, and he was not sentenced outside of § 841(b)(1)(C)'s statutory range. *Id.* at 5. The Government has no objection to amending the judgment under 28 U.S.C. § 2255(b) to show a conviction for violating § 841(b)(1)(C), but suggests Federal Rule of Criminal Procedure 36 cannot be used to correct the judgment. *Id.* at 6 & n.6.

**A.     The Information's failure to allege that Gray possessed 500 grams or more of cocaine is a prejudicial error that can be remedied by amending the Judgment.**

Gray's first argument is that his conviction and sentence are unlawful because Count One of the Information failed to allege all the essential elements of a violation of 21 U.S.C. § 841(b)(1)(B). Gray argues that when the Government elects to charge a defendant with possession with intent to distribute a certain quantity of drugs, that quantity becomes an element of the offense. Count One alleged Gray violated 21 U.S.C. § 841(b)(1)(B) by possessing with intent to distribute 50 grams or more of cocaine. But a violation of § 841(b)(1)(B) requires possession of more than 500 grams of cocaine, thus the Information failed to allege an essential element of this crime.

## 1.   The Court may entertain Gray's argument even though he failed to raise it on direct appeal.

Gray did not raise this argument on direct appeal.  Thus, as a threshold matter, the Court must determine whether it can address this argument in his § 2255 petition.  Gray suggests the error is a jurisdictional issue which can be raised at any time.  It is not.

A jurisdictional challenge goes to a court's "statutory or constitutional power to adjudicate the case" and can never be waived.  *United States v. Cotton*, 535 U.S. 625, 630 (2002).  Defects in an indictment, however, can be waived and "do not deprive a court of its power to adjudicate a case."  *Id.* at 631.  Whether an indictment charges a crime "goes only to the merits of the case," not a court's power to hear the case.  *Id.*; *see also United States v. Rubin*, 743 F.3d 31, 37 (2d Cir. 2014) (applying *Cotton* and holding that "challenges to indictments on the basis that the alleged conduct does not constitute an offense under the charged statute are [] non-jurisdictional challenges").  Consequently, Gray's challenge to the Information is non-jurisdictional, and he cannot raise it as a matter of right for the first time via his § 2255 petition.[5]

If a petitioner challenges his conviction on a ground not advanced on direct appeal, the claim can be procedurally defaulted.  *See Bousley*, 523 U.S. at 621.  Procedural default, however, is an affirmative defense, and if the Government fails to raise the argument, it is lost.  *Jones v. Norman*, 633 F.3d 661, 666 (8th Cir. 2010).  A party asserting a procedural default defense must assert it in the first responsive pleading.[6]  *Carter v. Hopkins*, 151 F.3d 872, 875 n.8 (8th Cir. 1998).  Similarly, although a criminal defendant can waive his right to collateral attack his

---

[5] Although *United States v. Carter* states "the sufficiency of an indictment is a jurisdictional issue which may be considered at any time," 270 F.3d 731, 736 (8th Cir. 2001), *Carter* predates *Cotton*.

[6] Of course, a court retains discretion to raise the issue of procedural default in a habeas proceeding sua sponte to correct an "obviously inadvertent" omission.  *Jones*, 633 F.3d at 666.

conviction in a plea agreement, waiver is an affirmative defense that must be raised by the Government. *Doe v. United States*, 51 F.3d 693, 699 (7th Cir. 1995).

Here, the Government has declined to argue that Gray defaulted this claim or waived his right to assert it.[7] This is consistent with the Government's position that it has no objection to amending the judgment under § 2255(b). Accordingly, the Court may consider Gray's claim that the error in the Information renders his conviction and sentence unlawful.

> **2. The failure to allege all the elements of the crime was, on the facts of this case, a violation that prejudiced Gray's substantial rights.**

The Court now turns to the merits of the claim. Gray argues, and the Government concedes, that the Information accidently charged Gray under § 841(b)(1)(B) when it should have charged him under § 841(b)(1)(C). Resp. at 21 ("[I]t appears the Government erroneously cited to § 841(b)(1)(B) in Count One of the information rather than § 841(b)(1)(C)."). This concession is consistent with the factual basis of the Plea Agreement, which establishes Gray possessed only 262.12 grams of powder cocaine and so should not have been convicted under § 841(b)(1)(B).[8] As a result of this mistake, the Information failed to allege an essential element of the crime, namely that Gray possessed with intent to distribute 500 grams or more of cocaine. *United States v. Gonzalez*, 686 F.3d 122, 992-93 (2d Cir. 2012) (holding drug type and quantity

---

[7] The Government argued procedural default and waiver in its response to Gray's initial arguments, but it did not assert any such arguments in the Sur-Reply, the Government's first opportunity to respond to the arguments raised in Gray's reply. Seeing no evidence that the Government's failure to raise these issues was an inadvertent omission, much less an "obviously inadvertent" omission, the Court declines to raise procedural default sua sponte. Also, the Court cannot raise the issue of any waiver of a provision of the Plea Agreement sua sponte. *Doe*, at 699.

[8] Further, the Government had no strategic reason to charge Gray under § 841(b)(1)(B). Charging Gray under § 841(b)(1)(B) did not expose him to a longer potential sentence. As a career offender, Gray's Guidelines range was the same whether he was convicted under § 841(b)(1)(B) or § 841(b)(1)(C). Since he was also pleading guilty under Count Two to possession of firearms in furtherance of a drug trafficking crime, a crime carrying a range of punishment of five years to life to be served *consecutively* to the sentence imposed on Count One, the Government could still seek a life sentence by charging him under § 841(b)(1)(C).

14

are essential elements of the offense that must be charged in the indictment to support conviction and sentencing under § 841(b)(1)(B)); *see* Fed. R. Crim. P. 7(c).

Before deciding whether § 2255 provides a remedy for this error, the Court agrees with the Government that the defect in the Information was more than just a simple citation error that can be corrected under Federal Rule of Criminal Procedure 36. Rule 36 may be used to "correct a clerical error in a judgment . . . arising from oversight or omission." It may not be used to alter a legal error in a judgment which, like the judgment in this case, is consistent with the court's oral pronouncement, the charging document, and the presentence report. *United States v. Frauendorfer*, 400 F. App'x 120, 120 (8th Cir. 2010); *see also* 3 Charles Alan Wright et al., 3 <u>Federal Practice & Procedure Criminal</u> § 641 (4th ed. 2014) (discussing the rule's applicability generally). The legal error here is that the Court calculated Gray's punishment under § 841(b)(1)(B). Although the error made no change in the length of Gray's sentence, it was not a clerical error.

Under § 2255, a district court may vacate, set aside a judgment, or correct a sentence imposed in violation of (1) the Constitution or (2) the laws of the United States. 28 U.S.C. § 2255. Constitutional violations are categorized as either structural errors, which can never be considered harmless, or nonstructural errors which are reviewed under harmless-error analysis. *Satterwhite v. Texas*, 486 U.S. 249, 256 (1988); *United States v. Clay*, 720 F.3d 1021, 1026 (8th Cir. 2013). Where an information fails to allege an essential element, it is a non-structural error subject to harmless-error analysis. *See Holder v. United States*, 721 F.3d 979, 999 n.14 (8th Cir. 2013) (holding an indictment's failure to allege an essential elements is reviewed for harmless error). The test for harmless error is straightforward: "A harmless error is any error, defect, irregularity, or variance that does not affect substantial rights." *Id*. (citing Fed. R. Crim. P.

52(a)). "'Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.'" *United States v. Allen*, 406 F.3d 940, 945 (8th Cir. 2005) (quoting *Chapman v. California*, 386 U.S. 18, 20 (1967)). The Government bears the burden of demonstrating that the defendant was not prejudiced by the error. *Id.*

So how does a court determine if an error in an information was "harmless beyond a reasonable doubt"? Cases involving indictments are instructive. When a defendant collaterally attacks his conviction after a jury trial by arguing that the indictment failed to allege an essential element of the offense, the court asks whether a rational grand jury would have found the missing element. *See, e.g., Holder*, 721 F.3d at 999; *Allen*, 406 F.3d at 945. The court asks this question because one of the grand jury's purposes is to ensure that there is probable cause to believe the defendant committed the crime charged. If a court finds a rational grand jury would have found the missing element, then the error is deemed harmless. Courts almost always find the answer is yes, reasoning that since the petit jury found the element present beyond a reasonable doubt when it voted to convict, a grand jury employing a lesser standard of proof would have certainly found the missing element.

But this case is different. Gray pled guilty to a defective *information*, and the purpose of an information is slightly different from the purpose of an indictment. An information informs the court of the facts alleged so that it can decide whether the facts alleged support a conviction, and thus whether to accept a defendant's guilty plea. *See United States v. Cruikshank*, 92 U.S. 542, 548 (1875). Thus, the relevant inquiry in this case is not whether a grand jury would have found the missing element in the Information, but whether a properly informed judge would have accepted Gray's guilty plea to Count One.

16

The answer is no. First, the record conclusively demonstrates that the parties intended for Gray to plead guilty to possession with intent to distribute 50 grams or more of cocaine, not 500 grams or required to sentence under § 841(b)(1)(B). Thus, the factual basis outlined in the Plea Agreement does not support Gray's guilty plea, and no judge would accept a guilty plea where there was not an adequate factual basis for it. Second, Gray believed he was not guilty of a § 841(b)(1)(B) offense. Although under some circumstances a judge may accept a guilty plea from a defendant who claims he did not commit the offense charged, *see North Carolina v. Alford*, 400 U.S. 25, 36-37 (1970), this was not an *Alford* plea or other situation under which it would be appropriate for a judge to accept the defendant's guilty plea despite his protestation that he did not commit the relevant conduct. Hence, the flaw in the Information affected a substantial right. This flaw prejudiced Gray because it led to a conviction for a more severe crime. Hence, the error was not harmless beyond a reasonable doubt. This harm, however, can be remedied by amending the judgment to state a conviction under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

Gray has not been prejudiced with respect to the length of sentence imposed. After carefully reviewing the entire record, including the presentence investigation report and the transcript from both sentencing hearings, the Court finds it would have sentenced Gray to the same sentence had it sentenced him under § 841(b)(1)(C). The Court's rationale for imposing the 130-month sentence was based on his status as a career offender and the other applicable factors; it did not turn on which precise subsection he was sentenced under. The sentence was well within § 841(b)(1)(C)'s statutory range. The fact that the Court could have imposed a lower minimum sentence under § 841(b)(1)(C) than under § 841(b)(1)(B) is irrelevant. The Court would not have imposed a lower sentence than it did because it simply would not have been

enough time. The Court imposed a 130-month sentence because it believed 130 months' imprisonment was the appropriate sentence.

### B. Because he was misinformed of the statutory range of punishment Gray's plea was not knowing and voluntary, but he was not prejudiced by the mistake.

Next, Gray contends his guilty plea was not knowing and voluntary because when he pled guilty he was misinformed of the statutory range of punishment. This is both a Rule 11 violation and a constitutional violation of the due process requirement that guilty pleas be entered into knowingly and voluntarily. *See United States v. Martin*, 714 F.3d 1081, 1084 (8th Cir. 2013); *Anderson v. United States*, No. 02-3655 RHK, CR99-57, 2003 WL 21135556, at *5 (D. Minn. May 15, 2003) (discussing analogous claim where the defendant pled guilty pre-*Apprendi* and attempted to raise the issue post-*Apprendi* in a § 2255 motion).

Because Gray could have raised this claim on direct appeal but did not, he would be procedurally barred from raising this claim if the Government objected on this ground. The Government did not, and so the Court may consider the merits of this claim.

On habeas review, the Court applies harmless-error analysis to a claim that the defendant's guilty plea was not knowing and voluntary because he was misinformed of the statutory range of punishment. *See United States v. Dominguez Benitez*, 542 U.S. 74, 80-82 (2004) (observing a Rule 11 violation is harmless error if it does not affect substantial rights). Under harmless-error review, when a district court fails to inform a defendant of the applicable minimum and maximum sentences he could face after pleading guilty, the Government bears "the burden of proving the defendant's knowledge and comprehension of the omitted information would not have been likely to affect his willingness to plead guilty." *United States v. Gray*, 581 F.3d 749, 752 (8th Cir. 2009). The Government has carried this burden.

When Gray pled guilty to the Information he was told that his statutory range of punishment was five to forty years' imprisonment on Count One and five years to life, to be served consecutively, on Count Two. Thus, as Gray understood it, he was facing a *higher* minimum sentence than if the Information had actually charged him under § 841(b)(1)(C). Since Gray agreed to plead guilty to a more severe range of punishment, logic dictates he would have been willing to plead guilty to a less severe range of punishment. Gray's claim that if he had been informed of the correct, lower range of punishment he would have insisted on going to trial to make the government prove that he violated 21 U.S.C. § 841(b)(1)(B) by possessing only 262.12 grams of cocaine is based on a flawed assumption. If Gray had spurned the Government's plea deal, he would have been tried on the original, three-count indictment alleging a crack-cocaine conspiracy, not the reduced charges in the two-count Information. The plea deal was that in return for waiving his right to trial on the charges in the indictment, he could plead guilty to the reduced charges in the Information. Hence, had he known the correct sentencing range under the Information, it would not have altered his decision to plead guilty in any way.

###    C.    Gray did not receive ineffective assistance of counsel because his attorneys failed to discover the error in the Information and Plea Agreement.

Finally, Gray argues his attorneys were constitutionally ineffective for failing to notice the plea agreement subjected him to the higher sentencing range of § 841(b)(1)(B). Again, to establish an ineffective assistance of counsel claim, Gray must show that: (1) counsel's performance was constitutionally deficient, and (2) this deficiency prejudiced his defense. *Armstrong*, 534 F.3d at 863. To establish the first prong, he must show that trial and appellate counsel's failure to discover the mistake in the Information and Plea Agreement was an error of such magnitude that their performance was constitutionally deficient. It was not.

Trial and appellate counsel neglected to compare the citations in the Information and Plea Agreement against the freshly revised statute and realize that it cited the incorrect statute and misstated the applicable sentencing range. Their mistake, however, was not so egregious or unreasonable that only an "incompetent" attorney would have made this error. *See Anderson v. United States*, 393 F.3d 749, 754 (8th Cir. 2005) (holding the Sixth Amendment right to counsel does not ensure that defense counsel will recognize and assert every claim). On the contrary, all of the other legal professionals who worked on this case—including counsel for the Government, the presentence investigation report writer, the Court and its staff, and the Eighth Circuit— overlooked the same mistake. The fact that so many others overlooked the same error demonstrates that trial and appellate counsel's performance was not so deficient that it rose to the level of a constitutional violation.

Accordingly, there is no merit to this claim.

## III. No evidentiary hearing is required.

Where a motion raises no disputed question of fact, no evidentiary hearing is required. *United States v. Meyer*, 417 F.2d 1020, 1024 (8th Cir. 1969). There are no disputed questions of fact here, so no evidentiary hearing will be held.

## IV. A certificate of appealability shall be issued on three questions.

In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that district courts must address whether a certificate of appealability should issue contemporaneously with entering a final order adverse to the movant.

A certificate of appealability should be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This

requires the movant to demonstrate "that reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 464 U.S. 800, 893 n.4 (1983)).

The Court holds no reasonable jurist would grant this § 2255 motion on most of the grounds advanced by Gray. However, a reasonable jurist might resolve several of the questions presented here differently. These questions are:

1. Whether Gray's conviction under 21 U.S.C. § 841(b)(1)(B) entitles him to withdraw his guilty plea or receive a new sentencing hearing.

2. Whether Gray knowingly and voluntarily entered his plea of guilty after being misinformed of the statutory range of punishment.

3. Whether Gray received ineffective assistance of trial and/or appellate counsel because his attorneys failed to discover the mistake in the Information.

### Conclusion

For the reasons discussed above, the motion (Doc. 1) is GRANTED IN PART. The Court will issue a partial amended judgment stating that on Count One Gray is guilty of violating "21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C)" instead of "21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)." The Judgment will not otherwise be altered. The Court also issues a certificate of appealability on the three questions listed above.

**IT IS SO ORDERED.**

Date:   July 31, 2015                                  /s/ Greg Kays_____
                                                       GREG KAYS, CHIEF JUDGE
                                                       UNITED STATES DISTRICT COURT